IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEVEN MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21-cv-559-DWD |
| | ) | |
| ANTHONY WILLS and MOHAMMED | ) | |
| SIDDIQUI, | ) | |
| | ) | |
| Defendants. | | |

MEMORANDUM & ORDER

**DUGAN, District Judge:**

Pending before the Court is Doctor Mohammed Siddiqui's Motion for Summary Judgment (Docs. 136 and 137). Defendant Anthony Wills, who is only in the case in his official capacity as the Warden of Menard Correctional Center ("Menard") for the purpose of enacting any injunctive relief that might be ordered, has also filed a Motion for Summary Judgment (Doc. 138). Plaintiff Stephen Murphy opposes the motion. (Doc. 152). For the reasons delineated below, the Court **GRANTS** Defendant Siddiqui's Motion for Summary Judgment (Doc. 137). Defendant Anthony Wills' Motion for Summary Judgment (Doc. 138) and Plaintiff's Motion to Appoint Counsel and an Expert for Trial (Doc. 152) are **TERMINATED** as **MOOT**.

## I.     INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, an inmate in the custody of the Illinois Department of Corrections, brings this *pro se* lawsuit pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights. Plaintiff contends that Dr. Siddiqui, one of the medical officials who treated Plaintiff for

hemorrhoids and rectal bleeding while he was incarcerated at Menard, was deliberately indifferent to his serious medical condition. Plaintiff alleges that Dr. Siddiqui persisted in an ineffective course of treatment and/or improperly delayed treatment by diagnosing hemorrhoids without ordering proper tests, providing nothing more than antacid, dismissing Plaintiff without adequately addressing his complaints about pain and blood in his stool, and failing to immediately refer Plaintiff to an outside specialist and/or for a colonoscopy. (Docs. 14, 93, 94, 144).

Following screening (Doc. 14), a single Eighth Amendment claim against Dr. Siddiqui for deliberate indifference to Plaintiff's serious medical condition survived. All other claims and parties were dismissed from the action without prejudice. *Id.* Anthony Wills, the warden of Menard, remains on the docket, in his official capacity only, for the purpose of enacting any injunctive relief that might be ordered in connection with Plaintiff's claim as to Dr. Siddiqui.

## II.   BACKGROUND[1]

At all times relevant to this lawsuit, Plaintiff was incarcerated at Menard, and Dr.

---

[1] Unless otherwise indicated, the following facts are undisputed. The Court notes that both Defendants filed a Rule 56 Notice after filing their respective motions for summary judgment. (Docs. 140 and 141). The Rule 56 Notices warned Plaintiff about the consequence of failing to properly support or address a fact. As stated in the Rule 56 Notices, the Court may consider any uncontested factual assertion undisputed for purposes of the motion and also grant summary judgment if the materials on file show that the moving party is entitled to it. *See* FED. R. CIV. P. 56(e)(2)-(3). In response to summary judgment, Plaintiff submitted a narrative document, a grievance, and several responses to grievances. Other than claiming that the attached grievance records dispute the claim that Plaintiff did not seek medical attention for abdominal pain or bloody bowel movements during a certain time period, Plaintiff does not directly refute the Defendants' statements of material facts and his factual assertions are not properly supported. Thus, the Court finds Defendants' statements of material fact to be undisputed. That being said, given Plaintiff's *pro se* status, in determining whether alleged facts are undisputed, the Court has independently reviewed the evidentiary record.

Siddiqui was a physician and employee of Wexford Health Sources, Inc., an on-site contractor that provides health care services at various IDOC facilities in the State of Illinois, including Menard. (Doc. 1; Doc. 14; Doc. 137-1 ¶ 2).

On December 3, 2018, Plaintiff was seen during a nurse sick call for complaints of blood in his stool. Plaintiff indicated that his current symptoms had been present for "a few days." He reported a history of hemorrhoids and recent diarrhea. Plaintiff was provided hemorrhoid cream and instructions on using the prescribed medication. Plaintiff was also directed to increase fluid and fiber in his diet, avoid straining, and follow up if symptoms persisted or worsened. (Doc. 137-1, BATES Label MEN p. 184).

On December 5, 2018, Plaintiff submitted a grievance stating that he experienced abdominal pain and blood in his stool on November 30, 2018. Dr. Siddiqui reviewed the grievance on December 5, 2018, concluding as follows:

> [O]ffender was seen by CMT Engelage on December 3, 2018 for concerns of bleeding/blood in stools at which time the CMT completed the hemorrhoids protocol. The CMT provided the offender with hemorrhoid cream and instructed the offender on the medication usage, increase fluid and fiber in diet: after acute period. Increase physical activity to prevent constipation: avoid straining: and return to nurse sick call if symptoms persist or worsen after 2 weeks. Per the offender medical record the offender has had no further complaints of blood in his stool at the time this grievance was answered.

(Doc. 144, p. 8).

On March 6, 2019, Plaintiff was seen during nurse sick call for complaints of abdominal pain lasting one week and dark red blood in his stool. Plaintiff was referred to a doctor. (Doc. 137-1, ¶ 6; Doc. 137-1, BATES Label MEN pp. 192-93).

3

On March 7, 2019, Plaintiff was seen by Dr. Shah. Plaintiff reported blood with bowel movements for the past two to three months. Dr. Shah ordered a stool occult blood test, a CBC blood panel, an iron blood test, a comprehensive metabolic panel, and abdominal, kidney, ureter, and bladder x-rays. (Doc. 137-1, ¶ 7; Doc. 137-1, BATES Label MEN pp. 193-95).

On March 8, 2019, Plaintiff submitted a grievance regarding "medical treatment." Plaintiff claimed that he was not being seen by nurse sick call for a request submitted on or about March 4, 2019. Dr. Siddiqui reviewed the grievance and concluded that Plaintiff's complaints had been addressed and that no other requests regarding nurse sick call were pending. (Doc. 144, p. 6).[2]

The x-rays ordered by Dr. Shah were completed on March 14, 2019.  (Doc. 137-1, ¶ 8; Doc. 137-1, BATES Label MEN p. 195).

As to the claims at issue in this lawsuit, Dr. Siddiqui saw Plaintiff for the first time on April 9, 2019. Dr. Siddiqui reviewed Plaintiff's labs with him and noted that they were normal and indicated the constipation shown on the x-ray was now resolved. Dr. Siddiqui's notes do not indicate that Plaintiff had any additional complaints of bleeding or pain at that time. (Doc. 137-1, ¶ 9; Doc. 137-1 BATES Label MEN p. 196; Doc. 144, pp. 10-11).

---

[2] This information is taken from a Memorandum signed by Dr. Siddiqui and attached to Plaintiff's Response. (Doc. 144, p. 6). The grievance referenced in the Memorandum is not attached to Plaintiff's Response. It is unclear what medical condition Plaintiff was grieving. But, to the extent it related to complaints of abdominal pain or blood in stool, the medical records reflect that Plaintiff was seen at nurse sick call on March 6, 2019, and referred to Dr. Shah on March 9, 2019. He also received x-rays as ordered by Dr. Shah on March 14, 2014.

On May 27, 2019, Plaintiff submitted a grievance claiming he had been experiencing bloody bowl movements with stomach pain. Plaintiff further indicated he had been having this issue for a few months, and that when he requested medical attention, it took a few weeks to be seen. (Doc. 144, pp. 12-13). Plaintiff asked to be seen by a physician. (Doc. 144, pp. 12-13).

The grievance was deemed an emergency, and Plaintiff was scheduled to see a nurse on May 29, 2019. However, when the nurse attempted to examine Plaintiff, he refused to come out of his cell, stating, "I'm not coming out of my cell to pay $5.00. I've seen the doctor before for this." (Doc. 137-1, BATES Label MEN p. 198; Doc. 144, pp. 10-11).

On May 31, 2019, the Healthcare Unit reviewed the Plaintiff's May 27, 2019 grievance, noting as follows:

> Offender was seen by Nurse Sick Call on 12-3-18 for hemorrhoids. It is noted offender had diarrhea. Offender educated on proper care of hemorrhoids and application of medication. Offender advised to follow up if problem persists after 2 weeks. The offender seen again on 3-6-19 for abdominal pain and blood in his stool and referred to the MD. It is also noted offender did not sign the copay but wanted to be seen. Offender was educated on the NSC procedure. Offender will would not sign for copay and was advised he would still be charged for the services provided per protocol. Offender seen by MD on 3-7-19 and orders for stool sample occult blood x3, lab drawn, and abdominal xray ordered. Offender received xray 3-14-19. Offender received the lab draw and stool sample instructions on 3-22-19. On 3-21-19 and 3-26-19 Offender received the lab draw and stool sample instructions on 3-22-19 and 3-26-19 offender requested his medical hold be taken off and was denied due to awaiting labs and testing for abdominal pain. Offender seen by an MD 4-9-19 to discuss lab results and advised labs were normal and xray showed constipation which had since been resolved. Offender request to discontinue the medical hold was approved. Offender scheduled to be seen by NSC on 5-29-19 for abdominal pain. It is noted when the nurse arrived for the appointment, offender

5

refused to come out of his cell. It is noted offender stated, "I'm not coming out of cell to pay $5. I've seen the MD for this." Offender once again educated on NSC procedure and that the nurse would not deny him medical care. Offender again stated he was not coming out of his cell and refused the appointment. No other requests regarding bleeding during bowel movements have been received from offender at this time. Offender should utilize nurse sick call protocol if any further issues.

(Doc. 144, pp. 10-11).

The grievance was deemed moot, and Plaintiff was advised to utilize nurse sick call if he experienced any further issues. (Doc. 144, pp. 11-15). Dr. Siddiqui also reviewed this grievance, concluding that Plaintiff was receiving treatment for his abdominal pain and rectal bleeding, and noting that Plaintiff had refused treatment on May 29, 2019. (Doc. 144, p. 16).

Between May 29, 2019, and February 11, 2020, despite being seen for other issues, Plaintiff made no complaints of bleeding during bowel movements or abdominal pain during any visits with medical staff at Menard. (Doc. 137-1, ¶ 11; Doc. 137-1, BATES Label MEN pp. 198-216).[3]

---

[3] During this time, Plaintiff's medical records indicate he had interactions with medical staff on June 7, 2019, July 18, 2019, July 22, 2019, August 5, 2019, August 7, 2019, August 8, 2019, August 9, 2019, August 10, 2019, August 18, 2019, October 14, 2019, January 22, 2020, January 29, 2020, January 31, 2020, February 3, 2020, and February 6, 2020. The medical records from these visits do not include any complaints about blood in stool, abdominal pain, or related issues. (Doc. 137-1, BATES Label MEN pp. 198-216). In his Response, Plaintiff claims it is "a lie" to say he did not seek medical treatment between May 29, 2019, and February 11, 2020. (Doc. 144, p. 2). Plaintiff attaches grievances in support of his claim. But the attached grievances do not refute this material fact. The evidence Plaintiff attaches to his response establishes that Plaintiff submitted grievances in December 2018, March 2019, and on May 27, 2019, alleging he was not receiving medical care as requested. (Doc. 144, pp. 6, 8, 10-13, 16). Each grievance was resolved after a review of medical records indicated that Plaintiff had received treatment for the stated medical issues and on one occasion, after noting Plaintiff refused to attend a scheduled medical visit. *Id.* An additional grievance response referenced by Plaintiff indicates that, on July 13, 2021, Plaintiff submitted a grievance asking to be placed in single cell status because of his ongoing stomach issues and stating that he was not receiving medical care for the same. (Doc. 144, pp. 14-15). But as with the other grievances and grievance responses referenced by Plaintiff, this does not refute that Plaintiff did not complain about abdominal pain or blood in his stool during any of his medical visits between May 29, 2019, and February 11, 2020.

On February 11, 2020, Plaintiff was seen during nurse sick call complaining of blood in his stool and diarrhea. The nurse referred Plaintiff to a physician. (Doc. 137-1, ¶ 12; Doc. 137-1, BATES Label MEN p. 216).

On February 18, 2020, Dr. Siddiqui examined Plaintiff a second time. Plaintiff reported experiencing rectal bleeding for the past year (intermittent blood when he wiped) and requested a special diet. Plaintiff refused a rectal examination. Dr. Siddiqui provided Plaintiff with stool cards, ordered a CBC panel, and ordered an iron blood panel. (Doc. 137-1, ¶ 13; Doc. 137-1, BATES Label MEN p. 217).

Despite being seen by medical staff for other issues, Plaintiff did not complain again of rectal bleeding or abdominal pain until December 17, 2020. On December 17, 2020, Plaintiff was seen by a nurse on sick call for complaints of constipation, blood in his stool, and straining/pain on his left side. The nurse provided medication, instructed Plaintiff to increase his fluid intake, activity level, and fiber. She also referred him to see a physician. (Doc. 137-1, ¶ 14; Doc. 137-1, BATES Label MEN p. 364).

Between December 23, 2020, and January 16, 2021, Defendant was seen by medical staff on five occasions for complaints of constipation, abdominal pain, and blood in stool. Medical staff prescribed medicine for the constipation, conducted a rectal exam (no hemorrhoids were visible), and ordered fecal occult blood tests, a CBC, a comprehensive metabolic panel, and an x-ray of Plaintiff's kidney, ureter, and bladder. (Doc. 137-1; ¶¶ 16-20; Doc. 137-1, BATES Label MEN pp. 365, 367, 369-71, 368, 372-73, and 374).

On April 6, 2021, Plaintiff saw NP Moldenhauer for a follow-up regarding his test results, which were all within normal limits. Plaintiff reported intermittent left lower

abdominal pain, and red bowel movements. Plaintiff refused a rectal exam, and NP Moldenhauer ordered a fecal occult blood test, an x-ray of Plaintiff's kidney, ureter, and bladder. NP Moldenhauer also prescribed Prilosec and Bentyl. (Doc. 137-1, ¶ 21; Doc. 137-1, BATES Label MEN p. 380).

On May 5, 2021, Plaintiff was seen by Dr. King. Plaintiff reported pain in his left epigastric area and dark red blood in his stool when he wiped. Plaintiff further reported that his prescribed medications were not helping. Dr. King submitted a collegial referral to a gastroenterologist. (Doc. 137-1, ¶ 22; Doc. 137-1, BATES Label MEN pp. 386-387).

On May 13, 2021, Dr. Siddiqui presented Dr. King's referral to Dr. Ritz, and it was approved. (Doc. 137-1, ¶ 23; Doc. 137-1, BATES Label MEN p. 389).

Plaintiff was seen at nurse sick call on May 27, 2021, and June 7, 2021, complaining about abdominal pain. He was referred to a physician. (Doc. 137-1, ¶ ¶ 24-25; Doc. 137-1, BATES Label MEN pp. 392-394).

Plaintiff was seen by a nurse practitioner on June 14, 2021. He informed Plaintiff he was scheduled to see an outside specialist. (Doc. 137-1, ¶ 26; Doc. 137-1, BATES Label MEN p. 397).

On July 8, 2021, Plaintiff saw a nurse practitioner again. he noted concerns about prescribing additional NSAID-type pain medication due to the risk of GI irritation. The nurse practitioner submitted another request for Plaintiff to be seen by a GI specialist and indicated that Plaintiff's x-rays were normal. He also ordered another stool occult test, urinalysis, blood panels, and Pepto-Bismol, Amoxil, and Biaxin. (Doc. 137-1, ¶ 27; Doc. 137-1, BATES Label MEN p. 406).

On July 13, 2021, Plaintiff was seen by GI Kristen Betz at SHI Medical Group. Plaintiff reported he had been experiencing abdominal pain with sudden onset for approximately one year, which occurred intermittently. Plaintiff reported the associated symptoms of diarrhea and hematochezia. Dr. Bets ordered an upper endoscopy (EGD) and colonoscopy. (Doc. 137-1, ¶ 28; Doc. 137-1, BATES Label MEN pp. 438-443).

That same day, Plaintiff submitted a grievance claiming that his ongoing bowel issues necessitated placing him in single-cell status. Plaintiff claimed that his cellmate was irritated with Plaintiff's ongoing bowel issues, placing Plaintiff in a dangerous situation. Plaintiff indicated that he had been having the same medical issues for years and was not receiving medical care. Plaintiff was directed to request a medical evaluation for cell placement and to schedule a visit with medical staff. (Doc. 144, pp. 14-15).

On December 12, 2021, Plaintiff underwent an EGD. (Doc. 137-1, ¶ 29; Doc. 137-1, BATES Label MEN pp. 1469-1871, 1537-38).

On February 9, 2022, Plaintiff underwent a colonoscopy at Herrin Hospital performed by Dr. Mack McCain. Stage two internal hemorrhoids were found, and banding was performed on the hemorrhoids. (Doc. 137-1, ¶ 30; Doc. 137-1, BATES Label MEN pp. 1522-1527).

On April 18, 2022, Plaintiff underwent Flexible Sigmoidoscopy with Band Ligation Banding at Herrin Hospital. Large internal hemorrhoids were noted, and four bands were placed during the procedure. (Doc. 137-1, ¶ 32; Doc. 137-1, BATES Label MEN pp. 1764-1766).

Plaintiff's symptoms of pain, cramping, and rectal bleeding continued to improve after his second banding, and, at the time of his deposition, he rated his current symptoms at a one or two out of 10. (Doc. 138-1, pp. 50-52).

### III.    APPLICABLE LAW

**A.    Summary Judgment Standard**

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record ... we draw only reasonable inferences")(internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party ... if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## B.      Deliberate Indifference Standard

To establish an Eighth Amendment violation by a prison official for failure to provide adequate medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-106 (1976); *Farmer v. Brennan*, 511 U.S. 835, 837 (1994). Deliberate

indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious,[4] and (2) the prison official acted with deliberate indifference to his medical need, which is a subjective standard. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

"To show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "This is a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.' " *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)).

The deliberate indifference "standard requires more than negligence and it approaches intentional wrongdoing. The Supreme Court has compared the deliberate indifference standard to that of criminal recklessness." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837) (internal citations removed)). Moreover, even medical malpractice does not establish deliberate indifference; "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[S]omething akin to recklessness" is needed. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

---

[4] Defendants do not argue that Plaintiff was not suffering from an objectively serious medical condition.

"A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King v. Kramer*, 680 F.3d 1013, 1018-19 (7th Cir. 2012) (internal quotation omitted). A prisoner's "dissatisfaction with a doctor's prescribed course of treatment" is not enough to sustain a deliberate indifference claim "unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *see also Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021).

When a prison medical professional employs his or her professional judgment, that decision is "entitled to deference" unless "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Plaintiff must present evidence the medical professional "knew better than to make the medical decisions that [he] did." *Petties*, 836 F.3d at 731; *see also Collingnon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).

Plaintiff's pain and any alleged delay in treatment are also relevant. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett*, 658 F.3d at 753. In cases where prison officials delayed rather than denied treatment, the plaintiff must offer verifying medical evidence that the delay (rather than the underlying condition) caused some degree of harm. *Id.* at 749, *citing Jackson v. Pollion*,

733 F.3d 786, 790 (7th Cir. 2013). An unexplained delay may warrant a finding of deliberate indifference if an inmate suffered unnecessary and prolonged pain and his condition deteriorated. *McGowan v. Hulick*, 612 F.3d 636 (7th Cir. 2010). "Whether a delay rises to the level of deliberate indifference depends on how serious the condition is and the ease of treatment." *Reck v. Wexford Health Sources, Inc.,* 27 F.4th 473, 483 (7th Cir. 2022).

## IV.   ANALYSIS

### A.   Anthony Wills

As a preliminary matter, the Court notes that Plaintiff contends Defendant Anthony Wills is liable for deliberate indifference because he was aware of Plaintiff's circumstances but failed to act on Plaintiff's behalf. But Plaintiff's complaint failed to state a claim against Wills. *See* Doc. 14 (dismissing Wills without prejudice at screening because the complaint failed to allege he was personally involved in the deprivation of a constitutional right). Plaintiff later filed an Amended Complaint (Doc. 95), but his Amended Complaint did not include any allegations directed against Wills (Doc. 93). As previously noted, Wills is only identified as a defendant in this action in his official capacity as the Warden of Menard for the purpose of implementing any injunctive relief that might be ordered in connection with Plaintiff's claims as to Dr. Siddiqui. Accordingly, the only matter in issue is whether Dr. Siddiqui was deliberately indifferent to Plaintiff's serious medical needs.

### B.   Dr. Mohammed Siddiqui

In essence, Plaintiff submits that Dr. Siddiqui was deliberately indifferent when he persisted in pursuing a course of treatment known to be ineffective and in failing to

refer Plaintiff to a gastroenterologist and/or for a colonoscopy sooner. Plaintiff claims that Dr. Siddiqui gave him the "run around[]," failed to conduct the proper tests, and merely "put a bandaid on a bullet wound." (Doc. 144, p. 2). But Plaintiff's claims are not supported by the evidentiary record.

The first doctor that examined Plaintiff for his complaints of rectal bleeding and abdominal pain was Dr. Shah. Dr. Shah ordered a stool occult blood test; a CBC blood panel; an iron blood test; a comprehensive metabolic panel; and abdominal, kidney, ureter, and bladder x-rays. As to the medical issues relevant to this case, Dr. Siddiqui saw Plaintiff for the first time on April 9, 2019. During that visit, Dr. Siddiqui reviewed the results of the tests ordered by Dr. Shah. The test results were all normal, and the constipation that had initially been shown on Plaintiff's x-rays had resolved. Additionally, the medical records do not indicate that Plaintiff presented any additional complaints of bleeding or abdominal pain at that time. Dr. Siddiqui examined Plaintiff for the second, and final, time on February 18, 2020. At that time, Plaintiff was complaining of rectal bleeding. Plaintiff refused a rectal exam. Nonetheless, given Plaintiff's complaints, Dr. Siddiqui provided Plaintiff with stool cards, ordered a CBC panel, and ordered an iron blood panel.

Dr. Siddiqui's interactions with Plaintiff in April 2019 and February 2020 do not establish deliberate indifference. In April 2019, Plaintiff's test results were normal, his constipation had resolved, and Plaintiff did not complain about continuing abdominal pain or bloody stools. In February 2020, when Dr. Shah learned that Plaintiff's symptoms had returned, he ordered routine tests to assist him in making a treatment decision.

15

Plaintiff faults Dr. Siddiqui for not sending him to a gastroenterologist and/or ordering a colonoscopy at that time, claiming that the tests he ordered were inadequate. But a prisoner's "dissatisfaction with a doctor's prescribed course of treatment" is not enough to sustain a deliberate indifference claim "unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Nothing in the record supports a finding that Dr. Siddiqui's course of treatment, after examining Plaintiff in April 2019 and February 2020, was blatantly inappropriate. Moreover, diagnostic testing is left up to the medical judgment of the treating clinician. As such, the difference of opinion as to when diagnostic testing should be ordered in and of itself does not amount to deliberate indifference. *See, e.g.*, *Jones v. Natesha*, 233 F. Supp.2d 1022, 1029-1030 (N.D. Ill. Dec. 5, 2002) (finding that use of a colonoscopy is a matter of medical judgment); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (finding that an x-ray or additional diagnostic testing is a matter for medical judgment).

Additionally, after his last visit with Dr. Siddiqui in February 2020, despite having several medical visits for other issues, Plaintiff did not complain about abdominal pain or rectal bleeding again until December 17, 2020. Between December 2020 and May 2021, Plaintiff received additional prescriptions and diagnostic testing for his symptoms. When Plaintiff's symptoms continued, Dr. King sent a referral for collegial review, and Dr. Siddiqui presented that referral for approval. The request was approved, and Plaintiff was sent to an outside specialist who ordered Plaintiff's colonoscopy. Nothing about this

chain of events supports a claim that Dr. Siddiqui refused to treat Plaintiff, as alleged in his complaint, that he ignored a serious medical condition or pain, or that he knowingly persisted in an ineffective course of treatment.

Plaintiff also argues that the delay in being referred to a gastroenterologist and/or in undergoing a colonoscopy, in and of itself, amounts to deliberate indifference. To survive summary judgment as to this claim, Plaintiff must present "verifying medical evidence that the delay (rather than the underlying condition) caused some degree of harm. *Id.* at 749, *citing Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013). In his response, Plaintiff claims that the delay in treatment has caused "health problems and stomach ulcers." But Plaintiff has not pointed to (and the Court has not located) any evidence in the record suggesting that a delay in treatment caused or exacerbated any health problems. Moreover, Plaintiff testified that, after receiving a colonoscopy and banding, his symptoms have improved.[5] Plaintiff also speculates that, given the delay in treatment, he could have developed or might be at risk of developing more serious conditions. But Plaintiff's speculation is not enough defeat summary judgment. *See Weaver v. Speedway, LLC,* 28 F.4th 816, 820 (7th Cir. 2022) ("inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.").

---

[5] During his deposition, Plaintiff provided the following testimony:

> Question: And so once you had that procedure done, it helped improve a lot of the symptoms you were having as far as pain, cramping, and the rectal bleeding?
> Answer: That's right.
> Question: So as of today, how severe would you rate your symptoms?
> Answer: Like 1 or 2 every now and then. This morning, I had no pain.
> Question: Okay.

(Doc. 138-1, pp. 50-51).

Finally, Plaintiff contends that, as the "medical director" and as an individual who reviewed some of Plaintiff's grievances, Dr. Siddiqui was aware of Plaintiff's serious medical needs, but failed to act on Plaintiff's behalf. The record, however, does not support a finding that Plaintiff was receiving inadequate medical care and that Dr. Siddiqui turned a blind eye to the same. *See* e.g., *Perez v. Fenoglio,* 792 F. 3d 768 (7th Cir. 2015); *Vance v. Peters,* 97 F. 3d 987, 993-94 (7th Cir. 1996). The grievance records involving Dr. Siddiqui (Doc. 144, pp. 6, 8, 16) reveal that Dr. Siddiqui reviewed Plaintiff's medical records finding each time that Plaintiff had recently received treatment for the medical issues complained of, including medication, labs, and x-rays. Additionally, on one occasion, Plaintiff refused to attend a scheduled appointment. Thus, the grievance documentation provided by Plaintiff does not support a finding of deliberate indifference.

## V.  DISPOSITION

For the foregoing reasons, Dr. Mohammed Siddiqui's Motion for Summary Judgment (Docs. 136 & 137) is **GRANTED**, and this action is **DISMISSED** with Prejudice. In light of this ruling, Anthony Wills Motion for Summary Judgment (Doc. 138) and Plaintiff's Motion to Appoint Counsel and an Expert for Trial (Doc. 152) are **TERMINATED** as **MOOT**.

The Clerk of the Court is directed to enter judgment in Defendants' favor and against Plaintiff. All deadlines and settings on the Court's calendar are vacated.

**SO ORDERED.**

Dated: March 27, 2024

_/s David W. Dugan_
DAVID W. DUGAN
United States District Judge

19